# 3D MARINE

Marine Consultants and Surveyors

## 3D MARINE USA, INC.

12411 Donna Drive, Houston, Texas 77067
Tel (281) 444-9495 (24 hours)  Fax (281) 444-8874
E-mail: firm@3dmarine.com

April 20, 2017

Our Ref. No. FRN/12668/DHS/17L

Pusateri, Barrios, Guillot & Greenbaum, LLC
1100 Poydras Street, Suite 2250
New Orleans, Louisiana 70163

Attn:   Mr. Robert R. Johnston / Mr. Jacques DeGruy

Re:   C.A. No. 2:16-cv-14287; *Chris DeJean vs. Caillou Island Towing Co., Inc.*; In the United States District Court, Eastern District of Louisiana

Dear Sirs,

At the request of Fowler, Rodriguez, Valdes-Fauli, 400 Poydras Street, 30th Floor, New Orleans, Louisiana 70130 and subsequently Pusateri, Barrios, Guillot & Greenbaum, LLC, 1100 Poydras Street, Suite 2250, New Orleans, Louisiana 70163; 3D Marine Consultants have reviewed the following documentation concerning the above captioned case:

1) Complaint;
2) Plaintiff's Answers to Interrogatories;
3) Response to Request for Production;
4) Initial Disclosures;
5) Recorded Statement of Chris DeJean;
6) Caillou Incident Report with U.S. Coast Guard Report, Boat Log and Attachments;
7) Caillou Incident Investigation Report;
8) Photographs of M/V L MARIE;
9) Recorded Statement of Randall Dean;
10) Caillou New Hire Orientation Booklet;
11) U.S. Coast Guard Medical Evaluation Letters;
12) Photograph of M/V L MARIE Taken by Plaintiff;
13) Deposition Testimony of Chris DeJean; and
14) Expert Report of John Betz.


EXHIBIT 4

In addition, the undersigned attended on board Pushboat L. MARIE at Cypress Coast Marina, Upper San Jacinto River, Highland Shores Road, Texas, on Tuesday, 21st March 2017, in order to carry out a vessel inspection in consequence of the incident involving Captain Christopher DeJean, which we understand occurred on 4th June 2015.




Captain David G. Marsh
F.N.I.

L. Keith Reay
B.Sc(Eng)., C.ENG.,
MIMARE, MCMS, MIEE

David H. Scruton
Master Mariner
B.Sc., M.C.I.T.



Opinions

Based on our above analysis of the case in question, we are of the following opinions:

1) We are of the opinion that Captain DeJean was an experienced Master, having served on board tug and push boats for between approximately 20 to 25 years, and prior to that approximately 15 years on trawlers.

2) We are of the opinion that a Captain upon joining a vessel should carry out an inspection to determine the vessel's general condition, familiarize himself with the vessel, in order to identify unsafe conditions or safety hazards, not only for himself, but for the safety of his crew and of the vessel.

3) We are of the opinion that M/V L. MARIE was fitted with designated safety walkways from the wheelhouse to the aft stern engine controls.

4) We are of the opinion that the designated walkway was appropriately coated with non-skid and was in conformity with industry standards.

5) We are further of the opinion that decks and other areas on push boats frequently become wet for a variety of reasons and that all crewmembers should exercise caution when walking and working on wet decks.

6) We are also of the opinion that Captain DeJean had every opportunity to use the handrail immediately adjacent to and parallel with the designated walkway which was within easy reach.

7) We are of the opinion that Captain DeJean himself violated industry standard practices and procedures and also Caillou Policies by not wearing safety shoes.

8) We are of the opinion that while some tug and push boat companies (small vessel operators) do paint all decks with non-skid, such is not a requirement.

9) Accordingly, by not painting the entire deck areas with non-skid is not a violation of any requirements or regulations.

10) We believe that as Master of M/V L. MARIE, that Captain DeJean had a responsibility to rectify any alleged unsafe issues regarding the deck coating or water leaking from the air conditioning unit. However, we are of the opinion that no unsafe issues in this respect were evident at the time of the incident.

11) We are of the opinion that Captain DeJean had every opportunity to correct any alleged deficiencies on board M/V L. MARIE during his prior 16 day period serving on board. If such alleged deficiencies could not be promptly corrected, for any reason, then Captain DeJean had every opportunity to exercise the industry standard practice and procedure of Stop Work Authority.

12) We are of the opinion that many of the Plaintiff's expert's comments and opinions have no basis or support.

13) We are of the opinion that the words "negligence" and "unseaworthy" should not be used by experts as they have legal implications and are for determination by the fact finder.

14) We believe that the weather conditions are not considered a factor.